UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     CRIMINAL ACTION

VERSUS     No. 17-139

JILL ANDRAS LEBLANC     SECTION I

## ORDER & REASONS

Before the Court is defendant Jill Andras LeBlanc's ("LeBlanc") motion[1] for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(a). The government opposes the motion.[2] For the following reasons, the motion is denied.

## I.

On January 3, 2018, LeBlanc pled guilty to counts one and two of a superseding bill of information,[3] which charged her with wire fraud in violation of 18 U.S.C. §§ 1343 and 2 and theft of government funds in violation of 18 U.S.C. §§ 641 and 2, respectively.[4] This Court sentenced LeBlanc to a term of imprisonment of one hundred months as to each of counts one and two, to be served concurrently, and a three-year term of supervised release.[5] The sentence imposed was an upward variance from the United States Sentencing Guidelines range based on the Court's

---

[1] R. Doc. No. 105.
[2] R. Doc. No. 121.
[3] R. Doc. No. 31.
[4] R. Doc. No. 37.
[5] R. Doc. No. 66.

consideration of the factors set forth in 18 U.S.C. § 3553(a).[6] LeBlanc's projected release date is April 4, 2025.

LeBlanc filed a notice of appeal to the United States Fifth Circuit Court of Appeals on June 26, 2018,[7] and the government moved to dismiss the appeal pursuant to the appellate waiver in LeBlanc's plea agreement.[8] The Fifth Circuit granted the government's motion, and her appeal was dismissed.[9] LeBlanc's petition for a writ of certiorari was also denied by the United States Supreme Court.[10]

On November 1, 2019, LeBlanc moved to reduce her sentence pursuant to 18 U.S.C. §§ 3553(b), 3742(f)(1), and 3742(f)(2).[11] The Court denied the motion because LeBlanc failed to cite any valid legal basis for relief.[12]

LeBlanc now requests compassionate release pursuant to the First Step Act. LeBlanc argues that her medical condition and the alleged failure of Bureau of Prisons ("BOP") medical staff to provide her with necessary medical treatment constitute extraordinary and compelling reasons for a sentence reduction.[13] LeBlanc also asserts that she is at greater risk of COVID-19 infection and death because of "close living barrack-styled living quarters" at FCI Aliceville, where she is currently

---

[6] *See* R. Doc. No. 68, at 3; R. Doc. No. 94, at 43–44. LeBlanc's sentencing guidelines range was 33 to 41 months.
[7] R. Doc. No. 77.
[8] R. Doc. No. 00514850985, *United States v. LeBlanc*, No. 18-30767 (5th Cir. Feb. 26, 2019).
[9] R. Doc. No. 00514872635, *United States v. LeBlanc*, No. 18-30767 (5th Cir. Mar. 14, 2019).
[10] *LeBlanc v. United States*, No. 18-9672, 2019 WL 4922269, at *1 (U.S. Oct. 7, 2019).
[11] R. Doc. No. 105.
[12] *See* R. Doc. No. 108.
[13] *See* R. Doc. No. 119, at 1–2.

serving her sentence.[14] LeBlanc asks that the Court reduce her sentence to time served or, alternatively, to home confinement to serve the remainder of her sentence.[15]

LeBlanc suffers from multiple sclerosis ("MS"), and she alleges that her condition has worsened due to lack of proper medical care in prison.[16] According to LeBlanc, she has been unable to receive the copaxone injections and other medications needed to treat her MS while incarcerated.[17] As a result, she explains, she has had four separate "attacks" from the disease, none of which, she alleges, were medically treated.[18] LeBlanc contends that the lack of proper medical treatment has resulted in permanent vision damage to her left eye, as well as additional damage to her brain and spinal cord.[19] LeBlanc fears that she will experience further permanent central nervous system damage without the medical care needed to treat her condition.[20]

In support of her request for compassionate release, LeBlanc provided two letters from her treating neurologist, Dr. Timothy Prestley.[21] In the first letter, dated December 12, 2019, Dr. Prestley explained that LeBlanc had not been receiving copaxone injections since being incarcerated, but she was on medications for

---

[14] *Id.* at 3.
[15] *Id.*
[16] *Id.* at 2.
[17] *Id.* at 5. LeBlanc asserts that she was receiving copaxone injections before she self-surrendered into federal custody on October 9, 2018. *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* at 2.
[21] *Id.* at 6–8.

3

neuropathic pain.[22] Because LeBlanc was in "close living quarters" and faced the risk of opportunistic infection while incarcerated, Dr. Prestley recommended that LeBlanc "stay off disease modifying therapy for now."[23] In the second letter, dated February 26, 2020, Dr. Prestley recommended that LeBlanc receive steroid treatment immediately if she has symptoms of relapse from her MS, and that LeBlanc be scheduled for an in-office appointment and "at least yearly neurological evaluations and MRIs to monitor the progression."[24]

The government opposes LeBlanc's motion and argues that it should be denied because LeBlanc's medical condition is not an "extraordinary and compelling" reason that warrants her release.[25]

## II.

Under 18 U.S.C. § 3582, as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may modify a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Upon the filing

---

[22] *Id.* at 6.
[23] *Id.*
[24] *Id.*
[25] *See* R. Doc. No. 121, at 11–15. The government initially opposed LeBlanc's motion on the additional basis that LeBlanc has not exhausted her administrative remedies under § 3582(c)(1)(A). *See id.* at 3. Following an inquiry by the Court, the government advised that in this particular case, it waives its argument that LeBlanc has not satisfied the exhaustion requirement. R. Doc. No. 123.

4

of such a motion, a court may reduce a defendant's sentence after considering to the extent applicable, the factors set forth in § 3553(a). *Id.* A defendant's sentence may only be reduced if the court finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*; § 3582(c)(1)(A)(i).

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), LeBlanc must both satisfy the exhaustion requirement[26] and demonstrate that "extraordinary and compelling reasons" warrant a reduction of her sentence in consideration of the factors set forth in § 3553(a) and the applicable policy statements by the United States Sentencing Commission.

### III.

In light of the fact that the government has waived its argument with respect to the exhaustion requirement, the Court will only address whether a reduction in LeBlanc's sentence is warranted.

As stated previously, § 3582(c)(1)(A) provides that a court may grant a sentence reduction if it is warranted by "extraordinary and compelling reasons," and the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

---

[26] The government initially opposed LeBlanc's motion on the additional basis that LeBlanc has not exhausted her administrative remedies under § 3582(c)(1)(A). *See id.* at 3. Following an inquiry by the Court, the government advised that in this particular case, it waives its argument that LeBlanc has not satisfied the exhaustion requirement. R. Doc. No. 123.

Although the policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, the policy statements are nevertheless instructive to the Court's determination of whether there are "extraordinary and compelling reasons" that warrant a reduction of LeBlanc's sentence. *See United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019).[27]

The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

The prognosis with respect to LeBlanc's MS is concerning to the Court, but it does not constitute an extraordinary and compelling reason in this particular case for a sentence reduction. Although there is presently no cure for MS, individuals with MS, although affected throughout their adult lives, may live many years with the

---

[27] Because the Sentencing Commission has not amended the applicable policy statement in light of the statutory changes to 18 U.S.C. § 3582, several other courts have concluded that there are no policy statements applicable to motions for compassionate release by defendants under the First Step Act, and a court may consider whether there are any extraordinary and compelling reasons other than those delineated in the Sentencing Commission's pertinent policy statement that warrant granting relief. *See United States v. Cantu*, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019); *Beck*, 425 F. Supp. 3d at 579; *see also United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases).

disability.[28] *See United States v. Gagne*, No. 3:18-CR-242, 2020 WL 1640152, at *3 (D. Conn. Apr. 2, 2020) (finding that the defendant's MS was not an "extraordinary and compelling" reason for a sentence reduction); *United States v. Casey*, No. 1:06CR00071, 2019 WL 1987311, at *2 (W.D. Va. May 6, 2019) (same). Moreover, LeBlanc has not demonstrated that her MS substantially diminishes her ability to provide self-care at FCI Aliceville. Although she contends that she has not been provided with proper medical treatment, her medical records show that she has been receiving prescribed steroid medication for her MS, in addition to other prescribed medications. In addition, she has been evaluated by a neurologist on multiple occasions,[29] and a neurology consult is currently pending. In this case, her disagreement with her treatment regime cannot serve as a basis for her release.

LeBlanc's concerns regarding COVID-19 also do not warrant a reduction of her sentence. LeBlanc has only alleged a general concern that her "close living . . . quarters" in prison raise the risk of COVID-19 infection.[30] Numerous courts have concluded that such broad allegations do not warrant a sentence reduction under § 3582. *See United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the

---

[28] *See* Mitchell T. Wallin, et al., *Global, regional, and national burden of multiple sclerosis 1990–2016: a systematic analysis for the Global Burden of Disease Study 2016*, 18 Lancet Neurology 269–85 (2019); *Survival and cause of death in multiple sclerosis: a 60-year longitudinal population study*, 88 J. Neurology, Neurosurgery, and Psychiatry 621 (2017) (finding that the median life expectancy was 74.7 years for individuals with MS and 81.8 years for the general population).
[29] *See* R. Doc. No. 119, at 6–7.
[30] *Id.* at 3.

*fear* of contracting a communicable disease warrants a sentence modification."); *United States v. Zywotko*, No. 2:19-CR-113-FTM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.") (quoting *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)); *United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

While the Court is alert to the risks of COVID-19 infection in correctional facilities, LeBlanc is forty-four years of age, and there is no evidence that she is immunocompromised or has any other underlying condition that increases her risk of infection.[31]

LeBlanc has also not demonstrated that BOP's response to the COVID-19 pandemic and the protocols it has implemented to curtail the spread of the virus are

---

[31] *See Multiple Sclerosis & Coronavirus*, Nat'l Multiple Sclerosis Soc'y, https://www.nationalmssociety.org/coronavirus-covid-19-information/multiple-sclerosis-and-coronavirus (last visited May 11, 2020) ("MS itself does not increase the risk of getting COVID-19.").

inadequate.[32] Moreover, the existence of COVID-19 at FCI Aliceville alone cannot independently justify compassionate release.[33] *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

## IV.

After reviewing the § 3553(a) factors and considering the applicable policy statement by the Sentencing Commission, the Court does not find that there are compelling or extraordinary reasons warranting a reduction of LeBlanc's sentence.

Accordingly,

**IT IS ORDERED** that LeBlanc's motion to reduce her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

New Orleans, Louisiana, May 11, 2020.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[32] As the government advised, BOP has implemented revised preventative measures for all institutions, including quarantine and isolation procedures, to require that all newly-admitted inmates be assessed using a screening tool and temperature check. R. Doc. No. 121, at 16; *see BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 11, 2020). Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff, and symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. *Id.*

[33] At FCI Aliceville, six inmates and four staff members have tested positive for COVID-19, and three inmates and three staff members have recovered. *See COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 11, 2020).