UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 17-139 |
| JILL ANDRAS LEBLANC | SECTION I |

### ORDER & REASONS

Before the Court is *pro se* defendant Jill Andras LeBlanc's ("LeBlanc") motion[1] for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion.[2] The Court finds that LeBlanc has not presented extraordinary and compelling reasons justifying her release. Furthermore, after considering the applicable factors in 18 U.S.C. § 3553(a), the Court concludes that compassionate release is not warranted. Accordingly, the Court denies the motion.

### I.

The Court is familiar with the facts of LeBlanc's case, which are set forth more fully in a prior order.[3] On January 3, 2018, LeBlanc pleaded guilty to counts one and two of a superseding bill of information,[4] which charged her with wire fraud in violation of 18 U.S.C. §§ 1343 and 2, and theft of government funds in violation of 18 U.S.C. §§ 641 and 2.[5] As part of her guilty plea, LeBlanc admitted to stealing

---

[1] R. Doc. No. 131 (motion); R. Doc. No. 136 (reply memorandum); R. Doc. No. 137 ("Notice of spike in COVID-19 cases at FPC Bryan and all BOP facilities").
[2] R. Doc. No. 133.
[3] R. Doc. No. 126.
[4] R. Doc. No. 31.
[5] *Id.* at 1–3.

$369,701.00 from her terminally ill mother, and $13,500.00 in social security disability payments from her handicapped sister.[6] This Court sentenced LeBlanc to a term of imprisonment of one hundred months as to each of counts one and two, to be served concurrently, and a three-year term of supervised release.[7] The sentence imposed was an upward variance from the United States Sentencing Guidelines range based on the Court's consideration of the factors set forth in 18 U.S.C. § 3553(a).[8] LeBlanc's projected release date is April 4, 2025.[9]

On June 26, 2018, LeBlanc filed a notice of appeal of this Court's judgment to the United States Fifth Circuit Court of Appeals,[10] and the government moved to dismiss the appeal pursuant to the appellate waiver in LeBlanc's plea agreement.[11] The Fifth Circuit granted the government's motion, and her appeal was dismissed.[12] LeBlanc's petition for a writ of certiorari was also denied by the United States Supreme Court.[13]

On March 27, 2020, LeBlanc, who suffers from multiple sclerosis ("MS"), filed a first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[14]

---

[6] R. Doc. No. 39, at 1–3; R. Doc. No. 60, at 7–10.
[7] R. Doc. No. 66.
[8] *See* R. Doc. No. 68, at 3; R. Doc. No. 94, at 43–44. LeBlanc's sentencing guidelines range was 33 to 41 months.
[9] *Inmate Locator*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited January 31, 2022).
[10] R. Doc. No. 77.
[11] R. Doc. No. 00514850985, *United States v. LeBlanc*, No. 18-30767 (5th Cir. Feb. 26, 2019).
[12] R. Doc. No. 00514872635, *United States v. LeBlanc*, No. 18-30767 (5th Cir. Mar. 14, 2019).
[13] *LeBlanc v. United States*, No. 18-9672, 2019 WL 4922269, at *1 (U.S. Oct. 7, 2019).
[14] R. Doc. No. 119.

LeBlanc argued that her medical condition and the alleged failure of Bureau of Prisons ("BOP") medical staff to provide her with necessary medical treatment constituted extraordinary and compelling reasons for a sentence reduction.[15] LeBlanc also asserted that she was at greater risk of COVID-19 infection and death because of "close living barrack-styled living quarters" at FCI Aliceville, where she was serving her sentence.[16] LeBlanc asked that the Court reduce her sentence to time served or, alternatively, to home confinement to serve the remainder of her sentence.[17]

On May 11, 2020, the Court denied LeBlanc's first motion for compassionate release, stating that "LeBlanc's MS is concerning to the Court," but that it did not constitute an extraordinary and compelling reason for a sentence reduction because LeBlanc's medical records demonstrated that she was receiving her prescribed medications.[18] Similarly, the Court concluded that COVID-19 was not a sufficient grounds for a sentence reduction because LeBlanc had not demonstrated that she was at a greater risk of infection.[19]

On October 26, 2020, LeBlanc submitted a new application with the Warden of FCI Aliceville for compassionate release.[20] On March 12, 2021, the Warden signed a written response, denying LeBlanc's request.[21] On July 22, 2021, LeBlanc was

---

[15] *Id.* at 1–2.
[16] *Id.* at 3.
[17] *Id.*
[18] R. Doc. No. 126, at 6–7.
[19] *Id.* at 8.
[20] R. Doc. No. 131-1, at 1.
[21] R. Doc. No. 133-1.

3

transferred from FCI Aliceville in Alabama to FPC Bryan in Texas where she is currently serving her sentence.[22]

LeBlanc now presents a second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[23] LeBlanc argues that her MS has worsened due to a lack of proper medical care in prison.[24] According to LeBlanc, "BOP cannot follow timely appropriate steroid treatment schedules," and "her medical condition continues to deteriorate."[25] As a result, LeBlanc explains that she required hospitalization for five days, and her eyesight is failing.[26] LeBlanc also alleges that she has developed asthma since the filing of her first motion for compassionate release.[27]

In support of her instant motion, LeBlanc provided a collection of her medical records,[28] email correspondence that LeBlanc sent to BOP health services,[29] and certificates of BOP classes that she has taken while incarcerated.[30] In an email dated November 16, 2020, LeBlanc maintained that she missed her scheduled neurology appointment and that her vision was worsening.[31] In response, a BOP health services employee wrote that LeBlanc had a "pending neurology consult off-site," and that the

---

[22] R. Doc. No. 133-2; *see also Inmate Locator*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited January 31, 2022).
[23] R. Doc. No. 131.
[24] *Id.* at 2–3.
[25] *Id.* at 3.
[26] *Id.* at 4.
[27] *Id.* at 5.
[28] R. Doc. No. 131-1, at 3–46.
[29] R. Doc. No. 136-1, at 1–3.
[30] R. Doc. No. 131-1, at 52–77.
[31] R. Doc. No. 136-1, at 1.

administrative staff were working "to get you in sooner if they have a cancellation."[32] LeBlanc responded on November 18, 2020 at 11:58 A.M.[33] LeBlanc conveyed her concern that "[t]he BOP is incapable of providing me the immediate neurology treatment I need," and she requested help securing medication while she waited for her consultation with her doctor.[34] The time stamp on LeBlanc's medical records indicates that LeBlanc was evaluated by a doctor at 7:04 P.M. on November 18, 2020, and the doctor recommended three to five days of inpatient care.[35] LeBlanc's medical records indicate that she was discharged on November 22, 2020.[36]

The government opposes LeBlanc's instant motion.[37] It argues that LeBlanc's motion should be denied because LeBlanc has failed to exhaust her administrative remedies, and because her medical condition is not an "extraordinary and compelling" reason that warrants her release.[38]

## II.

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). This rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion.[39] For such

---

[32] *Id.* at 2.
[33] *Id.* at 3.
[34] *Id.*
[35] R. Doc. No. 131-1, at 7.
[36] R. Doc. No. 131-1, at 22.
[37] R. Doc. No. 133.
[38] *See* R. Doc. No. 133, at 3–17.
[39] The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

a motion to be properly before the court, the defendant must either exhaust all administrative remedies, or thirty days must elapse "from the receipt of [a compassionate release request] by the warden of the defendant's facility, *whichever is earlier*[.]" *Id.*; § 3582(c)(1)(A) (emphasis added).

The court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c). The court must also conclude, however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual. The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

As noted above, the First Step Act provided a new avenue to request compassionate release. Previously, only the Director of the Bureau of Prisons ("BOP")—not defendants themselves—could move for compassionate release. The First Step Act changed that, but the Sentencing Commission's policy statements have lagged behind.  Because these policy statements have not been amended since the

6

enactment of the First Step Act, portions of the statements now contradict 18 U.S.C. § 3582(c)(1)(A).[40]

However, the Fifth Circuit recently clarified that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Nonetheless, the Fifth Circuit has also recognized that the policy statement may still "inform[ ] [its] analysis." *Thompson*, 984 F.3d at 433.

### III.

#### A.     Exhaustion of Administrative Remedies

The government contends that LeBlanc has not exhausted her administrative remedies because "[LeBlanc] has not presented an internal request for release to her warden at [FPC Bryan] to start the 30-day clock that must run before" LeBlanc can file a motion with the Court requesting compassionate release.[41] Specifically, the government contends that "[LeBlanc] filed a request at her prior facility in Aliceville, Alabama, but not at Bryan."[42] LeBlanc replies that "[t]he government provides no authority, nor can LeBlanc find any, to support [the] position that LeBlanc is required

---

[40] For example, the policy statement referenced above begins with, "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to such motions (and not those filed by defendants). U.S.S.G. § 1B1.13, Policy Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons[.]"); *see also United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy).
[41] R. Doc. No. 133, at 2.
[42] *Id.*

7

to refile her request to every new Warden at every new institution when she is transferred."[43]

Section 3582 allows a court to consider a defendant's compassionate release motion only after the defendant exhausts administrative remedies, "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement is "not jurisdictional but . . . *is* mandatory") (emphasis in original). The Fifth Circuit reasoned that "Congress used clear language: all requests for compassionate release must be presented to the Bureau of Prisons before they are litigated in the federal courts." *Franco*, 973 F.3d at 468. Further, the Fifth Circuit instructed that it is not "inclined to deviate from this clear text in pursuit of the statute's broader 'purpose' or 'intent.' […] When the text is clear, that is 'the end of the construction.'" *Id.* (citing *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 433, 450 (5th Cir. 1995)).

The government does not identify any authority holding that a defendant's transfer from one BOP facility to another invalidates a request for compassionate release that a defendant previously filed at a prior BOP facility.[44] The emerging consensus among courts which have addressed this question is that a defendant's transfer between facilities does not nullify the defendant's exhaustion of administrative remedies when the defendant filed a request for compassionate

---

[43] R. Doc. No. 136, at 2.
[44] R. Doc. No. 133, at 3–11.

8

release with the warden at a previous facility. *See, e.g., United States v. Davidson*, No. 16-139, 2020 WL 4877255, at *7 (W.D. Pa. Aug. 20, 2020) ("Mr. Davidson initiated the compassionate release process with the BOP by filing an administrative request for release with the warden of the facility at which he was then residing, and the BOP had more than thirty (30) days to consider that request. In that way, he followed the rules. Mr. Davidson's transfer in the interim does not change the fact that the BOP had the first crack at resolving the issue."); *United States v. Hamidu*, No. 18-58, 2021 WL 2808721, at *2 (S.D. Ohio July 6, 2021) (collecting cases); *United States v. Doan*, No. 14-225, 2021 WL 4819317, at *2 (S.D. Cal. Oct. 15, 2021); *United States v. Porter*, No. 18-68, 2021 WL 5989142, at *2 (W.D. Pa. Dec. 17, 2021).

The text of section 3582 requires only that 30 days lapse from the receipt of a request for compassionate release by the warden of the facility where the defendant is incarcerated. 18 U.S.C. § 3582(c)(1)(A). The text imposes no additional requirement, such as the one the government seeks to insert, *i.e.*, that LeBlanc must file a new request with the warden of her facility following a transfer by the BOP. *Id.*

The government does not dispute that LeBlanc filed a request for compassionate release on October 26, 2020 at FCI Aliceville, and that the warden responded on March 12, 2021.[45] A period of time well in excess of 30 days lapsed from LeBlanc's transmission of her request and the warden's response. LeBlanc's subsequent transfer to FPC Bryan does not alter the fact that she exhausted her

---

[45] R. Doc. No. 131-1, at 1; R. Doc. No. 133, at 2–3; R. Doc. No. 133-1; R. Doc. No. 133-2.

administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A). Accordingly, the Court will consider the merits of LeBlanc's motion.

### B.     Lack of Extraordinary and Compelling Reasons

A defendant must present extraordinary and compelling reasons justifying her compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement "informs" this Court's analysis of whether LeBlanc has presented such reasons. *Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1); *Perdigao*, 2020 WL 1672322 at *2. Again, the policy statement provides four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

As the Court observed in its prior order, "[t]he prognosis with respect to LeBlanc's MS is concerning to the Court, but it does not constitute an extraordinary and compelling reason in this particular case for a sentence reduction."[46] That

---

[46] R. Doc. No. 126, at 6. The Court also noted that "individuals with MS, although affected throughout their adult lives, may live many years with the disability." *Id.* (citing Mitchell T. Wallin, et al., *Global, regional, and national burden of multiple*

determination remains true with respect to LeBlanc's instant motion. Although LeBlanc makes allegations that she is not receiving timely medical treatment,[47] the records that she submitted instead indicate that BOP health services has been responsive to her requests for treatment.[48] For instance, LeBlanc alleges that she received no response to an email communication raising concerns about her MS attacks that she sent to BOP health services on November 18, 2020.[49] However, LeBlanc's medical records indicate that she was seen by a doctor later that same day, and the doctor recommended several days of inpatient treatment, which LeBlanc received.[50] The records further indicate that LeBlanc's doctor noted her concerns with respect to her MS and her eyesight, and that the doctor performed several tests.[51] LeBlanc has failed to demonstrate that extraordinary and compelling reasons exist for compassionate release based on her MS condition. *See* U.S.S.G. § 1B1.13 cmt. 1(A).

---

*sclerosis 1990–2016: a systematic analysis for the Global Burden of Disease Study 2016*, 18 Lancet Neurology 269–85 (2019); *Survival and cause of death in multiple sclerosis: a 60-year longitudinal population study*, 88 J. Neurology, Neurosurgery, and Psychiatry 621 (2017) (finding that the median life expectancy was 74.7 years for individuals with MS and 81.8 years for the general population)).
[47] R. Doc. No. 131, at 3–5.
[48] *Compare* R. Doc. No. 136-1, at 1–3 *with* R. Doc. No. 131-1, at 3–53.
[49] R. Doc. No. 136-1, at 3.
[50] R. Doc. No. 131-1, at 7; *see id.* at 22, 28. LeBlanc also alleges that she missed a scheduled doctor's appointment on November 12, 2020. *See* R. Doc. No. 136-1, at 2. Even assuming *arguendo* that this allegation is correct, it is assuaged by the fact that BOP health services informed LeBlanc that she had a new pending appointment scheduled, and that the BOP health services' "administrative staff have been working with [its] third-party scheduler and the neurologist's office to get [LeBlanc] in sooner if they have a cancellation." *Id.* Again, LeBlanc's medical records demonstrate that she was evaluated by a doctor on November 18, 2020. *See* R. Doc. No. 131-1, at 7.
[51] *See, e.g.*, R. Doc. No. 131-1, at 3–13.

Further, LeBlanc alleges that she has been diagnosed with asthma.[52] However, according to the medical records that LeBlanc submitted, she denied having asthma during the consultation with her doctor when she was admitted to the hospital on November 18, 2020.[53] "[M]erely alleg[ing]" a serious medical condition is not enough—LeBlanc must support her claims with evidence, and she has not done so. *United States v. Wells*, No. 17-104, 2021 WL 199386, at *3 (E.D. La. Jan. 20, 2021) (Barbier, J.) (concluding, after a review of the defendant's medical records, that the defendant had not carried his burden of showing extraordinary and compelling reasons as the medical records did not support the defendant's claim of chronic kidney disease). Overall, LeBlanc has failed to demonstrate extraordinary and compelling reasons which would warrant compassionate release based on her personal medical conditions.

LeBlanc also argues that the presence of COVID-19 at FPC Bryan, coupled with her MS, warrant her compassionate release.[54] LeBlanc's arguments regarding COVID-19 do not warrant her compassionate release. First, the existence of COVID-19 at FPC Bryan alone cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Second, LeBlanc does not address whether she is vaccinated against COVID-19.[55] COVID-19 vaccines can

---

[52] R. Doc. No. 131, at 5.
[53] *Compare* R. Doc. No. 131, at 5 *with* R. Doc. No. 131-1, at 3.
[54] R. Doc. No. 131, at 3, 6–14.
[55] *Id.* at 1–25; R. Doc. No. 136, at 1–10; R. Doc. No. 137, at 1–4.

12

lower the "risk of getting and spreading the virus that causes COVID-19."[56] *See United States v. Jones*, 2021 WL 1172537, at *2 (E.D. La. Mar. 29, 2021) (Barbier, J.) (denying relief where "[d]efendant has already received the Pfizer COVID-19 vaccine" that is "highly effective at preventing COVID-19 and may also reduce the risk of serious illness in the case of a COVID-19 infection").

### C. Consideration of the Sentencing Factors

Even if the Court were to find that LeBlanc had presented extraordinary and compelling reasons, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," the Court concludes that compassionate release is not warranted. *See* 18 U.S.C. § 3582(c)(1)(A). *See also Ward v. United States*, 11 F.4th 354, 360 (5th Cir. 2021) ("[T]he district court is obligated to consider the Section 3553(a) factors before deciding whether to order compassionate release[.]"). The most applicable factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) the "need for the sentence imposed—

---

[56] Centers for Disease Control & Prevention, Benefits of Getting a COVID-19 Vaccine, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (updated January 11, 2022). Of course, there may be individual cases where a defendant may not be able to receive an available COVID-19 vaccine because of a medical condition or other reason. However, LeBlanc has not argued that she is unable to receive a COVID-19 vaccine, and in general BOP has been diligently vaccinating all eligible inmates. *See United States v. Lipscomb*, No. 18-34, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021) ("What's more, [defendant's vaccination status] demolishes [his] conclusory contention BOP is not taking adequate precautions. Currently, tens—if not hundreds—of millions of Americans are scurrying to figure out how to get a vaccine. Yet Lipscomb already received both doses. This does not suggest BOP is taking COVID-19 lightly or not protecting Lipscomb."). Without addressing her vaccination status, LeBlanc has not demonstrated that the presence of COVID-19 is an extraordinary and compelling reason justifying her release.

13

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant[.]" *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C). After considering these factors, the Court concludes that a sentence reduction is inappropriate.

In particular, as part of the instant offenses, LeBlanc admitted to defrauding funds from her terminally ill mother and from her handicapped sister.[57] The evidence demonstrates that in 2008 LeBlanc obtained power of attorney authority over her elderly mother who at the time was terminally ill.[58] From on or about August 2010 to August 2013, LeBlanc stole $369,701.00 from her mother by means of false pretenses and representations.[59] LeBlanc used the funds that she stole from her mother to pay for unauthorized personal spending, including cosmetic surgeries and vacation expenses.[60] LeBlanc's actions left her mother with "no money for utilities, medicine, [and] health insurance," and LeBlanc's mother "never had [peace] of mind in her dying days."[61]

Further, when LeBlanc's sister was approximately 12 years old, her sister was diagnosed with a disease of the central nervous system, and LeBlanc became her

---

[57] R. Doc. No. 39, at 1–3; R. Doc. No. 60, at 7–10; R. Doc. No. 94, at 3, 7–8 (noting that LeBlanc and her counsel both read and discussed the presentence investigation report, and neither had objections to its contents).
[58] R. Doc. No. 60, at 7.
[59] *Id.*
[60] *Id.* at 7–8.
[61] R. Doc. No. 94, at 45.

caretaker.⁶² LeBlanc's sister requires the use of a wheelchair and needs assistance twenty-four hours a day.⁶³ LeBlanc similarly had power of attorney authority over her sister, and she used that authority to steal $13,500.00 of her sister's social security disability funds.⁶⁴ In 2009, LeBlanc used the funds she stole from her sister to make purchases in Isla Mujeres and Cancun, Mexico.⁶⁵

The Court considered all of this undisputed evidence when deciding to impose an upward variance with respect to LeBlanc's sentence.⁶⁶ The length of LeBlanc's sentence is justified by the section 3553(a) factors enumerated above. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C). These factors strongly weigh against granting LeBlanc's instant motion for compassionate release.

### IV.

Accordingly,

**IT IS ORDERED** that LeBlanc's second motion⁶⁷ for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

New Orleans, Louisiana, February 1, 2022.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

⁶² R. Doc. No. 60, at 9.
⁶³ *Id.*
⁶⁴ *Id.*
⁶⁵ *Id.*
⁶⁶ R. Doc. No. 66, at 2; R. Doc. No. 68, at 1–4; R. Doc. No. 94, at 44–47, 49.
⁶⁷ R. Doc. No. 131.